MAYMIE E. FRENCH, Appellee, v. THOMAS B. FRENCH et al., Appellants.

CONTRACTS: Validity—By Approval of Court—Extrajudicial Acts
1  of Parties—Effect—Wife Desertion. An agreement which becomes valid only after approval by the court may not, subsequently to such approval, be invalidated by the extrajudicial acts of the parties. So held in an action on a note given for the purpose of securing a dismissal of an indictment for wife desertion. (Section 4775-c, Code Supplement, 1913.)

PRINCIPLE APPLIED: A husband was under indictment, charged with deserting his wife and children and failing to support them. The father of the husband, after a conference with the wife and the county attorney, agreed, in writing, to deposit with the county attorney $100 in cash, and his note, payable to the said attorney, for $200, to be delivered to the wife "as orally agreed between the parties hereto." This agreement was actually for the purpose of securing a dismissal of the indictments, as provided by Section 4775-c, Code Supplement, 1913. *The court approved the settlement*, the prosecution was dismissed, and the cash payment and note were placed in the hands of the county attorney, all, apparently, on April 8th. Later, at a time not definitely shown, the said money was paid to the wife and the note assigned to her. On April 27th, following the approval by the court, a further writing was entered into (conceded, *arguendo*, to be on behalf, and with the consent, of the wife), in which it was agreed, in substance, that the consideration for the cash and note was an agreement by the wife *to secure a divorce from her husband.* This latter agree-

ment was never brought to the attention of the court. *Held*, the cash payment and the giving of the note were given validity by the court's approval, and could not be invalidated by the later writing.

**PRINCIPAL AND AGENT: The Relation—As Affecting Third 2   Parties.** Manifestly, a principal and agent may not enter into any agreement detrimentally affecting the rights of a non-consenting third party.

**WIFE DESERTION: Settlement—Power of Court.** The power of 3   the court, under Section 4775-c, Code Supplement, 1913, to accept and approve, *from a defendant* in a criminal prosecution for wife desertion, a bond conditioned for the support of the defendant's wife and children, and to thereupon release the defendant, embraces the power to accept and approve any other form of settlement, aside from a bond, which will reasonably answer the same purpose. So held where the court approved a cash payment and the giving of a promissory note, all by the *father* of defendant.

*Appeal from Van Buren District Court.*—F. M. HUNTER, Judge.

WEDNESDAY, APRIL 5, 1916.

REHEARING DENIED SATURDAY, SEPTEMBER 30, 1916.

ACTION upon a promissory note in the sum of $200, executed by defendants to Theo. A. Craig, and by Craig endorsed to plaintiff. The making of the note is admitted, but defendants claim that it was and is void and of no effect, because founded, in part at least, upon an illegal and immoral consideration, in that it was based upon a promise by plaintiff to secure a divorce from her husband within a fixed time. On the issues joined, the cause was tried to a jury, resulting in a directed verdict for plaintiff, and defendants appeal.— *Affirmed.*

*G. R. Buckles* and *A. L. Heminger,* for appellants.

*W. D. McCormick* and *Sloan & Sloan,* for appellee.

EVANS, C. J.—Benjamin French was indicted for seducing the plaintiff and appellee herein, and, upon trial

to a jury, a verdict of guilty was returned. In order to
escape punishment, he married the prose-
cutrix before judgment was pronounced. A
child was born before, and another after, the
marriage. French lived in Missouri with his
parents at the time of the seduction; but
after the marriage, he came into Iowa and went to the home
of his wife's parents to live, until he could provide a home
elsewhere. Soon thereafter, he rented a farm in Missouri,
just across the Des Moines River, and furnished the house on
this farm. It is claimed on the one side, and denied on the
other, that plaintiff refused to go to the farm which the
husband had rented; but it is agreed that he refused to live
longer with his wife's parents, and, as a result, two other
indictments were presented against French, one for desert-
ing his wife, and the other for deserting and failing to sup-
port his children. After the return of these indictments,
defendant Thos. B. French, father of plaintiff's husband,
came upon the scene, for the purpose of getting rid of those
indictments against his son. Pursuant to negotiations be-
tween the father, Theo. A. Craig, the county attorney, who
was prosecuting the indictment for desertion, and the plain-
tiff, for the settlement of the cases, the following written
agreement was signed by Thos. French:

1. CONTRACTS: va-
lidity: by ap-
proval of court:
extrajudicial
acts of parties:
effect: wife de-
sertion.

"It is hereby agreed by and between Thomas B. French,
of Clark County, Missouri, and Maymie French, of Croton,
Lee County, Iowa, that the said Thomas B. French shall, on
or before the 8th day of April, 1911, deposit in the hands of
Theo. A. Craig, of Keokuk, Lee County, Iowa, the sum of
$100 in cash, and a bankable note for the sum of $200, due
February 1st, 1912, with interest at the rate of 6 per cent
per annum. The said money and the said note to be delivered
to the said Maymie French as orally agreed between the par-
ties hereto.

   "[Signed]                         Thomas B. French"

This agreement was assented to by plaintiff; the settlement was approved by the court; and defendant French, with I. J. Wilson as surety, signed the note in suit, which is an ordinary negotiable instrument for the sum of ·$200, made payable to Theo. A. Craig, and becoming due February 1, 1912. It will be noted that the foregoing instrument bears no ' date, but it purports to have been entered into some time. prior to April 8, 1911. The deposit therein provided for was actually made on April 8th, and the note bears such date. The foregoing having been approved by the court, the prosecution was accordingly dismissed. At some time subsequent, the deposit thus put into the hands of the county attorney was by him delivered to the plaintiff herein. On the face of the papers, therefore, thus far set forth, the liability of the defendant would appear to be clear. The defendant, however, relies upon a subsequent written agreement, purported to have been executed on April 27th, which recited other considerations for the deposit, which considerations are alleged by defendant to be illegal and against public policy. It is contended that, because of such illegal considerations, the note was rendered void. It is also contended that the delivery of the note was conditional, and that such conditions were not performed.

The contract of April 27th, thus relied on, was as follows:

"Witnesseth: That whereas the party of the second part is the father of Benjamin French, and the said second party as the father of Benjamin French, is interested in having affairs between his said son and his son's wife, Maymie French, adjusted, and all differences and claims of every kind and character between his said son and his wife settled in full, and whereas the said Maymie French desires to get a divorce from the said Benjamin French, and, for the purpose of carrying out such settlement and adjustment, the party of the second part has deposited with the party of the first part the sum of $100, and one promissory note for $200,

due Feb. 1, 1912, and Thos. B. French and I. J. Wilson, to be held and used by the party of the first part *as the agent of the party of the second part* for the following purposes only: that, in the·event that the said Maymie French shall secure a divorce from the said Benjamin French and, in the said divorce suit, secure the custody of the minor children, then and in that event the said party of the first part is to turn over and pay to the said Maymie French the said sum of $100 and the said note or the proceeds thereof in full of all claims for dower, damages or any other claim, it being understood that the specific terms do not limit or govern the general terms.　And the said party of the first part is to take such a receipt from the said Maymie French and deliver the same to the party of. the second part.　In event that the said Maymie French should fail or refuse to secure a divorce in the terms described above and sign such a receipt within one year from the date hereof, then and in that event the said party of the first part is to turn over and pay back to the party of the second part the said $100 and the said note or the proceeds thereof.　The said first party agrees to carry out all of the terms and conditions herein.

"Witness our hands this 27th day of April, 1911.

"(Signed)　T. A. CRAIG, Party of the first part.

　　　　　　THOMAS B. FRENCH, Party of the second part."

Benjamin French died in November, 1911, and plaintiff did not secure a divorce from him.　He had left her about six months after their marriage, and never came back, or in any way contributed to her support or to that of her children. During her husband's last illness, plaintiff called upon him, and they had a sort of a reconciliation, and, according to her testimony, it was agreed that, if the husband ever recovered, they would live together again.

The defendant construes the foregoing contract to *require* the plaintiff to obtain a divorce from her husband as a condition precedent to obtaining delivery of the deposit

in the hands of Craig. It will be noted that the contract referred to does not, in terms, require the obtaining of a divorce as a condition precedent, but it is capable of being so construed.

On the other hand, we are not so sure but that it is capable of a construction entirely consistent with the instrument of April 8th, above set forth. For the reasons hereinafter appearing, it must either be so construed or it must be deemed as wholly nugatory. We shall deal only with the latter alternative. Our conclusion thereon renders it unnecessary that we deal with the question of construction. The agreement of April 8th involved a settlement of a criminal prosecution against Benjamin French for desertion of his wife and failure to support his family. The public necessarily had an interest in the prosecution. Craig, the county attorney, was necessarily in charge thereof. The plaintiff was without power to enter into the contract of April 8th, except tentatively. Notwithstanding its execution by the parties thereto, it could only become binding and effective upon the approval of the court. It was so approved; it did, therefore, become binding and effective and the prosecution was accordingly dismissed. Assuming, for the moment, that the contract of April 27th was entered into in behalf of the plaintiff and with her consent, could she thereby modify the effect of the agreement of April 8th, which was approved by the court? It would seem to follow, logically, that, if she was without the power to render the agreement of April 8th binding and effective without the approval of the court, she was likewise without power to modify it by attaching new provisions thereto without obtaining the approval of the court to such modification. In other words, she could only enter into the contract of April 27th tentatively, and subject to the approval of the court. It is not claimed that the second contract ever had the approval of the court. We think it clear, therefore, that it is not available to the defendant to now attach it to, or impose it as a condition upon, the contract of April 8th,

which was duly approved by the court. The most that could be said, in any view, of the second contract, is that it was tentative, and that it could become binding and effective only upon the approval of the court.

This contract, by its terms, presents a further reason in support of the same conclusion. Whereas the first contract purported to be made by and between Thomas French and Maymie French, the parties hereto, the sec-

2. PRINCIPAL AND AGENT: the relation: as affecting third parties.
ond contract purported to be made by Thomas French as principal, with Theo. A. Craig as his own agent. Craig does not assume therein to represent Maymie French, nor to act as county attorney. His official relation to the original case necessarily ceased with its dismissal. Since April 8th, the right of the plaintiff to the deposit was complete. Could the *defendant* defeat such right on April 27th by entering into a written contract with his own agent? It is manifest that the contract, by its own terms, is ineffective to such end.

The contention at this point is, however, that the instrument of April 27th simply reduced to writing certain oral conditions and considerations which had not been included in the writing of April 8th, but had been recognized and incorporated by reference. It is argued that the agreement of April 8th on its face shows that it was subject to certain oral conditions. This contention is based upon the last sentence of such agreement:

"The said money and the said note to be delivered to the said Maymie French as orally agreed between the parties hereto."

We do not think the foregoing provision should be construed as a condition. It did not purport to be such. It was a mere recognition of the fact that the written contract had been made in pursuance of a previous oral agreement. It added nothing to the contract and took nothing therefrom. Why should a written contract be presented for the approval of the court if it was still to be subject to hidden conditions

resting in parol? Such conditions had as much need of the approval of the court as any other proviso of the contract. That no such oral conditions were in fact attached to the contract of April 8th is made to appear from the following testimony of the defendant, himself; and this is the only material testimony in the case, apart from the written instrument:

"He made the offer to E. L. McCoid, on the day preceding the trial. His offer was for my son to put up a $1,000 bond to support the children. I refused. The next offer was for $800. The next day he came down to six, and I would not do that. Then he wanted $400 in bond or cash. After he made these offers and I refused them, we finally agreed upon the $300, as set out in the agreement."

The statutes prohibiting desertion of wife or children provide that, before sentence, the party arrested may appear and give bond, conditioned that he will furnish his wife, or

3. WIFE DESERTION: settlement: power of court. his children, as the case may be, with a home, food, care and clothing, and upon so doing, the court may order his release. The primary purpose of the statute punishing desertion is to secure to the wife and children proper support, and it is doubtless within the discretion of the trial court to approve, to that end, anything, aside from a bond, which will reasonably answer the purpose. The contract entered into in this case was for the purpose of arresting the prosecutions for wife desertion, which it did, and to secure something for the support of both wife and children; and in this respect, the arrangements, although not according to the statute, in that no bond was required, were not illegal or against public policy.

It is very manifest from the testimony of the defendant himself that the real purpose of the agreement of April 8th was to satisfy the statute, and thereby to obtain a dismissal of the prosecution. This result was accomplished by means of an agreement which was submitted in writing, for the

approval of the court.  Upon such approval, dismissal of the prosecution was thus obtained.  If the subsequent agreement of April 27th can be construed consistently with the agreement of April 8th, so be it.  If not, it cannot be permitted to destroy such agreement of April 8th, and thereby nullify the conditions upon which the dismissal was ordered by the court.

We reach the conclusion, therefore, that the trial court properly directed the verdict for the plaintiff, and its order is accordingly—*Affirmed*.

DEEMER, WEAVER and PRESTON, JJ., concur.